IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

| | |
|---|---|
| POLYLOOM CORPORATION ) <br> OF AMERICA d/b/a TenCate Grass ) <br> North America, ) <br> ) <br>     Plaintiff, ) <br> ) <br> v. ) <br> ) <br> GRASSROOTS ENVIRONMENTAL ) <br> EDUCATION, INC., ) <br> DR. KYLA BENNETT, ) <br> JAY FELDMAN, ) <br> DR. SARAH EVANS, and ) <br> PATRICIA WOOD ) <br> ) <br>     Defendants. ) | Docket No. _____ |

**VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF**

Plaintiff Polyloom Corporation of America, by and through counsel, brings this Verified Complaint for Injunctive Relief against Defendants Grassroots Environmental Education, Inc., Dr. Kyla Bennett, Jay Feldman, Dr. Sarah Evans, and Patricia Wood (collectively, "**Defendants**"), and for its cause of action states as follows:

**PARTIES**

1. Plaintiff Polyloom Corporation of America d/b/a TenCate Grass North America ("**Plaintiff**") is a Delaware corporation with its principal place of business located at 1131 Broadway Street, Dayton, Tennessee 37321.

2. Defendant Grassroots Environmental Education, Inc. ("**GEE**") is a nonprofit corporation organized under the laws of New York, with a principal place of business located at 184 Main Street, Port Washington, New York 11050.

3. Upon information and belief, Defendant Dr. Kyla Bennett ("**Bennett**") is a citizen and resident of Maryland.

4. Upon information and belief, Defendant Jay Feldman ("**Feldman**") is a citizen and resident of the District of Columbia.

5. Upon information and belief, Defendant Dr. Sarah Evans ("**Evans**") is a citizen and resident of New York.

6. Upon information and belief, Defendant Patricia Wood ("**Wood**") is a citizen and resident of New York.

7. Among other reasons, due to their involvement with and participation in the subject Event, as further detailed herein, Defendants have purposefully availed themselves of the privilege of acting in Tennessee and/or causing a consequence in Tennessee. As further detailed herein, the subject Event is advertised to "towns, cities and schools across the county" which would include those in Tennessee.

## VENUE AND JURISDICTION

8. This Court has original jurisdiction of this case under 28 U.S.C. § 1332 because Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

9. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the acts and omissions giving rise to this action occurred in this district. Specifically, the Eastern District of Tennessee is home to Plaintiff's headquarters where it employs a significant number of employees. Defendants' tortious conduct attempts to undermine Plaintiff's tremendous investments in this Rhea County, Tennessee and the economic impact of Defendants' unlawful actions, should they be left unchecked, will be profound.

Furthermore, in actions asserting claims for defamation or libel, the cause of action for venue purposes will be deemed to have accrued in the county where the injury accrued, which, in this instance, is Rhea County located within this district.

## FACTS

10. Plaintiff is a global leader in designing and producing innovative and sustainable artificial grass surfaces for sports and landscaping.

11. Plaintiff was one of the early entrants into the synthetic turf market, developing products that accelerated the adoption of synthetic turf in sports such as soccer, football, baseball, softball and field hockey.

12. Over the years, Plaintiff has expanded its offerings into the outdoor living sector, developing innovative landscape turfs that are hardly discernible from natural grass.

13. Plaintiff's business is fully integrated from research and development, design and production to distribution, installation, and recycling. This holistic approach enables Plaintiff to help create healthier and more beautiful communities for future generations.

14. Plaintiff is one of the largest designers, producers, recyclers, manufacturers, and installers of artificial turf in the United States, with Plaintiff's largest customers being schools and governmental municipalities.

15. Given Plaintiff's position in the artificial turf industry, when statements are made about artificial turf, listeners or readers of such statements reasonably conclude that the statements are being made in reference to Plaintiff and/or its artificial turf products.

16. As one of the largest designers, producers, recyclers, manufacturers, and installers of artificial turf in the United States, Plaintiff is inherently tied to the overall health and perception of the artificial turf industry. Any harm to the artificial turf category, as a whole,

directly affects Plaintiff's reputation, operations, and market position. The harm to the integrity of the artificial turf industry, and by extension to Plaintiff directly, that has been and will be caused by misstatements and falsehoods set forth herein not only undermines the artificial turf industry as a whole, but also disproportionately affects key stakeholders in the artificial turf industry, like Plaintiff, who have invested heavily in maintaining its integrity and success.

17. GEE is an environmental advocacy organization that purports to advise the public on the "health risks of common environmental exposures[.]"

18. One of GEE's major targets of advocacy is artificial turf fields.

19. Indeed, on its website, GEE has dedicated multiple web pages and alleged fact sheets to the supposed danger of artificial turf; however, many of GEE's allegations are verifiably false and defamatory.

20. As of the filing of this Complaint, GEE plans to hold a webinar on January 23, 2025 entitled "The Trouble with Turf" (the "**Event**"). The Event is specifically advertised to "towns, cities and schools across the county," Plaintiff's primary customer base.

21. Upon information and belief, registration and attendance for the Event is available to and accessible by citizens of Tennessee and current and prospective customers of Plaintiff.

22. As of the filing of this Complaint, Defendants Bennett, Wood, Feldman, and Evans are the confirmed speakers for the Event.

23. GEE has promoted the Event on its website (www.grassrootsinfo.org), as well as its associated website for the project: How Green Is My Town? (www.howgreenismytown.org) and its Facebook (https://www.facebook.com/grassrootsinfo) and Instagram (https://www.instagram.com/grassroots_info/p/DD93OYcqH9P/) social media pages.

24. In the promotional materials that GEE has published in advance of the Event, GEE has again made a number of misleading and false statements regarding artificial turf, all of which can be reasonably construed to be about Plaintiff and its products.

25. GEE has alleged: "Most artificial turf fields contain per- and polyfluoroalkyl substances ('PFAS') that are required for the manufacturing process. These 'forever' chemicals have been linked to a growing list of serious human health illnesses and conditions as well as environmental degradation."

26. ***This statement is misleading***. In fact, as confirmed by an independent testing lab, there are no detectable PFAS in any of Plaintiff's current products.

27. GEE has alleged: "Artificial turf fields are made from plastic, an unsustainable product made from a combination of fossil fuels and chemicals, many of them toxic to humans. These multi-ton plastic fields cannot be recycled when worn out, and contribute to our worldwide plastic pollution problem."

28. ***This statement is false***. In fact, Plaintiff has pioneered turf recycling processes, *see* https://turfrecycling.us/, and all of the materials used in artificial turf are regulated, tested, and comply with US and EU regulations.

29. GEE has alleged: "Artificial turf fields require the use of pesticides to treat body fluids that grass fields take care of naturally."

30. ***This statement is false.*** In fact, fields are cleaned as part of a maintenance process, but Plaintiff's maintenance manual specifically states that the use of chemicals are not recommended. Further, no pesticides are approved for maintenance of Plaintiff's artificial turf products.

31. GEE has alleged: "High lead and other toxic chemical levels have been detected in aging artificial turf fields made from nylon and polyethylene. Sun and wear break down the turf fibers into a dust contaminated with lead that can be rubbed off onto hands or other parts of the body."

32. ***This statement is false***. In fact, the "aging fields" that GEE references were removed from use in and around 2007. For the past 15 years, none of Plaintiff's artificial turf fields have contained lead, and testing of artificial turf fields is on par with toy safety standards for heavy metals, including lead.

33. GEE has alleged: "Most artificial fields use rubber from recycled tires ('crumb rubber') to infill spaces between plastic grass blades, cushioning the surface. Chemical toxins cannot be removed from recycled tires, and exposure to this hazardous waste material presents significant potential human health risks."

34. ***This statement is false***. In fact, independent studies have failed to identify significant health risks associated with recycled tire crumb rubber in synthetic turf.

35. Similar and additional false and misleading statements regarding Plaintiff's artificial turf products are published on GEE's website and linked fact sheets.

36. Further, in an effort to convince school and government leaders that there is credence and support for their claims, in the same promotional materials for the Event, GEE has published demonstrably false and misleading statements about supposed efforts by other towns and cities to ban artificial turf fields.

37. GEE alleges, for example, that Cape May, NJ has issued a ban on artificial turf fields and Boston, MA has similarly halted the installation of artificial turf fields out of concerns of PFAS "forever chemicals."

38. ***Both of these allegations are misleading***. Neither Cape May, NJ nor Boston, MA currently have such bans and artificial turf fields continue to be installed in both cities.

39. Defendants' false statements regarding the safety and performance of artificial turf will cause Plaintiff monetary and, more importantly, irreparable reputational harm.

40. Further, Defendants' false and misleading statements regarding the safety and performance of artificial turf threaten to harm Plaintiff's existing and prospective business relationships. These statements threaten to hinder Plaintiff's ability to fulfill its contractual obligations and Defendants are intentionally impeding the growth of this market and causing great uncertainty for existing and prospective customers.

41. Should the Event move forward on January 23, 2025, Defendants will again assert false and misleading statements that will cause Plaintiff irreparable reputational harm.

42. Upon learning of the Event on or about January 14, 2025, Plaintiff, through counsel, sent notice on January 15, 2025, of its concerns regarding the misleading and false statements contained on GEE's website to Defendants and requested that Defendants (i) remove false information from all platforms, (ii) reschedule the Event and (iii) collaborate on content review (the "**Letter Request**"). A true and correct copy of the Letter Request is attached hereto as Exhibit "A."

43. Pursuant to the Letter Request, Plaintiff asked that the Defendants notify the Plaintiff by 4:00 pm on January 17, 2025 (the "**Response Deadline**") that they each would (i) cease all dissemination of false or misleading information, (ii) postpone the Event until the inaccuracies are corrected and (iii) work with Plaintiff to verify the proposed content is accurate and not misleading.  Defendants did not respond to the Letter Request by Response Deadline.

44. As of the filing of this Verified Complaint, Defendants have not agreed to the requests made in Letter Request.

45. Absent the issuance of a restraining order and temporary injunction halting the Event until Defendants agree to refrain from including the false and defamatory information, such as that identified above, in that webinar, Plaintiff will suffer immediate and irreparable injury because Defendants will again publicly state false and defamatory allegations regarding Plaintiff's business. Furthermore, absent injunctive relief requiring the removal and retraction of all false and defamatory statements, material and information contained on their websites and various affiliate sites, Plaintiff will suffer immediate and irreparable injury.

## CAUSES OF ACTION

### Count I – Defamation / Trade Libel

46. Plaintiff incorporates the foregoing allegations as though fully set forth herein.

47. Defendants' published statements regarding the safety and performance of Plaintiff's artificial turf products are false.

48. Defendants made these statements knowing that they were false or with reckless disregard for their falsity or for the falsity they imply.

49. These statements may be reasonably interpreted by the general public as statements of actual fact.

50. These knowingly false statements have damaged Plaintiff's economic interests and reputation in Tennessee and elsewhere.

51. Plaintiff seeks nominal and compensatory damages, as well as consequential and punitive damages. In addition, Plaintiff seeks equitable relief, including an injunction requiring (at a minimum) that Defendants take down and retract all defamatory statements from their website and their other promotional materials, and that they be precluded from making those

false and defamatory statements during webinars or other media events such as podcasts or interviews, which they have used in the past to publish these statements to the public.

### Count II – Intentional Interference with Business Relationships / Tortious Interference with Prospective Relationships

52. Plaintiff incorporates the foregoing allegations as though fully set forth herein.

53. Plaintiff has existing and prospective business relationships with numerous entities, including schools and government municipalities, who currently or will in the future seek to utilize Plaintiff's artificial turf products.

54. Defendants are aware of Plaintiff's existing and prospective business relationships, including the school and government municipality relationships.

55. Defendants have intentionally published false statements regarding Plaintiff's products for the express purpose of inducing a breach or termination of that business relationship.

56. Defendants intentionally interfered with Plaintiff's business relationships with an improper motive and through improper means.

57. Plaintiff has suffered damages as a result of Defendants' intentional interference with Plaintiff's business relationships in excess of $75,000.

### PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

1. That proper process be issued and served upon Defendants requiring Defendants to answer this Complaint within the time and in the manner required by law;

2. That the Court enter a Restraining Order and/or Temporary Injunction enjoining the Event from proceeding on January 23, 2025 and requiring Defendants to remove and retract their false and defamatory statements regarding Plaintiff;

3. That Plaintiff be granted a judgment for compensatory damages in amount no less than $75,000, and that Plaintiff be awarded punitive damages in the amount the trier of fact deems fair and just; Plaintiff reserves the right to amend these averments as discovery in this matter proceeds, including discovery concerning whether Defendants have profited from the wrongful conduct outlined above;

4. That Plaintiff be allowed its attorneys' fees and all costs of litigation, if and to the extent any such fees and costs are allowed by statute, by application of the rules of this Honorable Court, and/or by contract pursuant to the law and facts applicable to this case;

5. That Plaintiff be awarded all costs of the Court and all discretionary costs allowable by statute, applicable rules of Court, and/or in the Court's discretion;

6. That a jury be empaneled to hear this case; and

7. That Plaintiff be awarded such other and further legal or equitable relief as this Honorable Court and/or the trier of fact deems appropriate.

Respectfully Submitted,

BURR & FORMAN LLP

*/s/* Matthew B. Rogers
Brian C. Neal (BPR No. 022532)
Matthew B. Rogers (BPR No. 038777)
222 Second Avenue South, Suite 2000
Nashville, Tennessee 37201
Telephone: 615-724-3200
Facsimile: 615-724-3290
bneal@burr.com
mrogers@burr.com

-and-

Graham H. Stieglitz (*practice pending admission*)
Georgia Bar No. 682047
1075 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30309

        Telephone: (404) 815-3000
        Facsimile: (404) 817-3244
        gstieglitz@burr.com

*Attorneys for Plaintiff*

# **EXHIBIT "A"**